**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EARL C. WALKER, | ) | CASE NO. 1:25-CV-02662-CEH |
| | ) | |
| Plaintiff, | ) | JUDGE CARMEN E. HENDERSON |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant, | ) | |

## I. Introduction

Earl C. Walker ("Walker" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (ECF No. 7). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's nondisability finding and DISMISSES Plaintiff's Complaint.

## II. Procedural History

On May 29, 2024, Walker filed an application for DIB, alleging a disability onset date of March 31, 2024. (ECF No. 13, PageID #: 4498). The application was denied initially and upon reconsideration, and Walker requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On June 30, 2025, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.* at PageID #: 4515-44). On August 28, 2025, the ALJ issued a written decision finding Walker was not disabled. (*Id.* at PageID #: 4498-4510). The ALJ's

decision became final on October 14, 2025, when the Appeals Council declined further review. (*Id.* at PageID #: 4482-84).

On December 9, 2025, Walker filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 14, 15). Walker asserts the following assignments of error:

> (1) The ALJ erred at Step Three of the Sequential Evaluation when she failed to properly evaluate Plaintiff's headaches and find that Plaintiff equaled Listing 11.02B.
>
> (2) The ALJ committed harmful error when she failed to properly apply the criteria of Social Security Ruling 16-3p.

(ECF No. 14 at 1).

**III. Background**

**A. Disability Allegations**

The ALJ summarized Walker's disability allegations:

> Here, it has been alleged the claimant is disabled because of his HIV positive status, and because of back pain, headaches, gastrointestinal problems, asthma, allergies, folliculitis, plantar fasciitis, and depression (see Ex. 2E, p. 2; 3E, p. 8; and the claimant's hearing testimony; see also Ex. 9E). Alleged symptoms include pain, headaches, diarrhea, depression, and fatigue (see Ex. 3E, p. 8; and the claimant's hearing testimony; see also Ex. 9E). Regarding work-related limitations, it has been alleged the claimant has a residual functional capacity for less than sedentary work (see Ex. 9E; see also the claimant's hearing testimony).

(ECF No. 13, PageID #: 4504).

**B. Relevant Medical Evidence**

The ALJ also summarized Walker's health records and symptoms:

> Notably, the claimant was hospitalized for most of January 2024, which is before the March 31, 2024, alleged onset date, for a variety of problems involving impairments, including a partial small bowel obstruction, which have not persisted for 12 continuous months' duration (see Exs. 13F and 14F). The evidence also shows that the claimant has received some treatment since March 31, 2024, for headaches (see, for example, Ex. 7F, p. 8). Testing also showed the claimant has

> "minimal" cervical degenerative disc disease and "mild" degenerative joint disease in the right knee (see Ex. 1A, pps. 2 and 3). The claimant has also taken medication for headaches, chronic diarrhea, and depression, and he has intermittently been using a CPAP machine for his obstructive sleep apnea (see, for example, Ex. 4F, p. 38). The claimant has also received chiropractic care and acupuncture in relation to back pain complaints (see, for example, Ex. 13F, p. 112). The claimant has also been mildly obese at times since March 31, 2024 (see, for example, Exs. 13F, p. 113). The claimant's HIV disease has also been asymptomatic since March 31, 2024 (see, for example, Ex. 1F, p. 45)
>
> Headache complaints have ranged from four to five headache days per week in July 2024 (see Ex. 7F), to two to three headache days per week in October 2024 (see Ex. 5F, p. 41), to two to three headache days per week in January 2025 (see Ex. 7, p. 8; see also Ex. 13F, p. 112). The claimant also described himself in November 2024 as having three to four bowel movements per day (see Ex. 7F, p. 36). The claimant also reported on April 22, 2025, that he had been having up to six bowel movements per day for three weeks (see Ex. 10F, p. 33)
>
> In terms of objective evidence, the claimant has consistently displayed mostly normal mental signs aside from some depression and anxiety (see, for example, Exs. 1F, pps. 35, 50, and 56; 4F, pps. 71, 80, and 107; 7F, p. 8; 9F, pps. 11, 13, 26, 28, and 34; 10F, pps. 14, 18, 30, and 46; and 13F, pps. 113, 177, and 613). The claimant has also been neurologically intact since the March 31, 2024, alleged onset date, and he has normal muscle strength, normal sensation, normal coordination, normal musculoskeletal motion, and a normal gait (see, for example, Exs. 7F, p. 8; and 13F, pps. 8, 113, 177, 613, and 614).

(ECF No. 13, PageID #: 4504-05).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2029.

2. The claimant has not engaged in substantial gainful activity since March 31, 2024, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairments: human immunodeficiency virus disease, depression, migraine headaches, gastrointestinal disorders including colitis, cervical degenerative disc disease, lumbar spondylosis, degenerative joint disease in the right knee, and obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he cannot climb ladders, ropes, or scaffolds, and except he can occasionally climb ramps and stairs, and except he can occasionally stoop, kneel, crouch, and crawl, and except he cannot work around unprotected heights or around dangerous moving machinery. Mentally, the claimant can understand, remember, and carry out simple and detailed, but not complex, instructions. The claimant cannot perform work requiring a specific production rate pace, such as assembly-line work, or an hourly production quota, but he can meet production requirements that allow a flexible and goal oriented pace. The claimant can also maintain the focus, persistence, concentration, pace, and attention to engage in such tasks for two-hour increments, for eight-hour workdays, within the confines of normal work breaks and lunch periods. The claimant can also deal with occasional changes in a routine work setting.

6. The claimant cannot perform his past relevant work (20 CFR 404.1565).

…

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 31, 2024, through the date of this decision (20 CFR 404.1520(g)).

(ECF No. 13, PageID #: 4500-01, 4503, 4508-09).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B. Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the

claimant has the residual functional capacity to perform available work in the national economy. *Id.*

**C. Discussion**

Walker raises two issues on appeal: (1) the ALJ erred at step three when she concluded Claimant's headaches did not meet or equal a listing, and (2) the ALJ erred in considering Claimant's subjective complaints.

**1. Listing Determination**

Claimant first challenges the ALJ's determination that his headaches did not meet or equal a listing, specifically Listing 11.02. (ECF No. 14 at 9-13).

At step three, an ALJ considers whether a claimant's impairment is severe enough to prevent them from completing gainful activity. 20 C.F.R. § 404.1525. If an impairment meets or equals a "Listing of Impairments," they are presumed disabled. *Id.*; *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 710 (6th Cir. 2013) ("A claimant who meets or equals a listed impairment is presumptively disabled, without consideration of her age, education, or work experience."). To meet a listing, the claimant "must satisfy all of the [listing's] criteria." *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *3 (6th Cir. Aug. 10, 2020). The claimant "bears the burden of showing that an impairment meets or equals a listed impairment." *Id.* If the ALJ's listing finding is supported by substantial evidence, based on the record as a whole, the Court will defer to the ALJ's finding, "[e]ven if the record could support an opposite conclusion." *Id.* at *4. Moreover, if the ALJ's listing finding is not supported by substantial evidence, the error is harmless if the claimant cannot show that her impairments met or medically equaled a listing. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014).

While Listing 11.02B addresses epilepsy, Social Security Ruling ("SSR") 19-4p explains

that this listing "is the most closely analogous listed impairment for an MDI of a primary headache disorder." SSR 19-4p, 2019 WL 4169635, at *7. SSR 19-4p further explains:

> To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

*Id.*

Plaintiff argues that despite finding his headaches were a severe impairment, the ALJ "failed to discuss either Listing 11.02 or Social Security Ruling (Ruling or SSR) 19-4p" in her step three analysis. (ECF No. 14 at 9). Plaintiff argues the medical evidence supports that he "was having the requisite number of headaches" because he "was having headaches at least once a week for at least three consecutive months" and the "headaches were described by a treating source, in the neurology clinic at the VA" such that he should have been found disabled at step three. (*Id.* at 11-12).

The Commissioner responds that Claimant has failed to carry the burden of showing he met or equaled the Listing. (ECF No. 15 at 5). The Commissioner argues that "in order to make a finding that an impairment medically equals a listing, SSR 17-2p provides that the record 'must' contain a finding of medical equivalence by a state agency consultant at the initial or reconsideration level of review, a medical expert at the hearing level, or a report from the Appeals Council's medical support staff" and no such finding exists here. (*Id.* at 7). Additionally, the

Commissioner argues that the evidence supports that "the frequency of Plaintiff's headaches varied over the course of the period at issue" and Plaintiff reported headache relief from various medications such that he cannot show that his headaches rose to listing level severity.

The Court agrees with the Commissioner that the ALJ did not err in her step three analysis. Here, in discussing the listings, the ALJ explained:

> The record in this case does not show the medical signs, symptoms, laboratory findings, or degree of functional limitation required to meet or equal the criteria of any listed impairment, and no acceptable medical source designated to make equivalency findings has concluded the claimant's impairment(s) medically equal a listed impairment. This includes the State agency medical consultants who reviewed this record (see Exs. 1A and 3A). Their opinions the claimant did not have a listing-level impairment(s) are uncontradicted. They are also persuasive. This is because they are internally supported, and because they are not inconsistent with other evidence of listing-level problems.

(ECF No. 13, PageID #: 4501). The ALJ later explicitly indicated that there was "no evidence in this case of the types of problems described in Listings … 11.02." (*Id.*). Thus, contrary to Claimant's argument, the decision makes clear that the ALJ considered whether Claimant's headaches equaled the Listing.

The medical records Claimant cites to support that his headaches are equal to a listing include his complaints of headaches with "[p]hotophobia, phonophobia, nausea, vomiting, dizziness, increased bilat tinnitus," but other instances where he denied vision changes or dizziness; reports of experiencing headaches anywhere from one to five days a week but responding to medication; and emergency room notes regarding headaches following two head injuries. (ECF No. 13, PageID #: 4742, 4748, 5005, 5120, 5204-05, 5291, 6598, 7119, 7123). However, these records fail to include the required description of his migraines, side effects of treatment, and, perhaps most critically, any limitations associated with his migraines. Thus, the ALJ considered Listing 11.02B, substantial evidence supports the ALJ's decision, and Plaintiff

failed to carry his burden of establishing that he met or equaled the Listing.[1]

**2. Symptom Allegations**

Claimant next challenges the ALJ's consideration of his symptoms. (ECF No. 14 at 14-21).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, an ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence in the record. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304.

Beyond the medical evidence, an ALJ should consider daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. SSR 16-3p, 2017 WL 5180304 at *7-8. The ALJ need not analyze all seven factors but should show that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). An ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms … and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*; *see also Felisky v. Bowen*, 35 F. 3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will

[1] Notably, at the hearing, Claimant's attorney explicitly stated that he was "not advancing a step three argument." (ECF No. 13, PageID #: 4521).

not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18-cv-1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (*citing Rogers*, 486 F.3d at 248-49), *report & recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

In his brief, Claimant highlights his testimony concerning his symptoms and points to evidence he believes supports his testimony. (ECF No. 14 at 14-18). Claimant argues the ALJ "erroneously only mentioned [Claimant's] fatigue once in the decision when discussing Plaintiff's alleged symptoms" and "only mentioned [diarrhea] as a symptoms [sic] and as a condition for which he was taking medication" such that the ALJ "failed to address two of Plaintiff's principal complaints." (*Id.* at 18). Claimant argues the ALJ "failed to support her conclusion with substantial evidence supported by the record, necessitating a remand of this matter." (*Id.* at 20).

The Commissioner responds that "the ALJ applied several of the pertinent factors to reach the determination that Plaintiff's allegations of totally disabling impairments were not consistent with the record" and this determination was supported by substantial evidence. (ECF No. 15 at 9-10). To the extent Claimant argues his fatigue and need to use the bathroom frequently necessitated additional limitations, the Commissioner argues Claimant failed to identify any limitation the ALJ should have found but did not. (*Id.* at 11).

The Court again agrees with the Commissioner. The ALJ provided a detailed discussion of why she assessed Claimant's RFC as she did:

> Again, the claimant has "minimal" cervical degenerative disc disease and "mild" degenerative joint disease in the right knee (see, again, Ex. 1A, pps. 2 and 3). A lumbar x-ray on May 14, 2025, was also normal (see Ex. 13F, p. 10). As above, the claimant's HIV disease has also been asymptomatic since the March 31, 2024, alleged onset date (see again, for example, Ex. 1F, p. 45).
>
> In addition, the claimant has consistently displayed mostly normal mental signs to include having an intact memory, normal cognition, normal behavior, normal

moods, and normal judgment and insight (see again, and for example, Exs. 1F, pps. 35, 50, and 56; 4F, pps. 71, 80, and 107; 7F, p. 8; 9F, pps. 11, 13, 26, 28, and 34; 10F, pps. 14, 18, 30, and 46; and 13F, pps. 113, 177, and 613). The claimant has also been neurologically intact since the March 31, 2024, alleged onset date, and he has normal muscle strength, normal sensation, normal coordination, normal musculoskeletal motion, and a normal gait (see again, and for example, Exs. 7F, p. 8; and 13F, pps. 8, 113, 177, 613, and 614).

The fact the claimant has not had surgery since the March 31, 2024, alleged onset date also supports the assessed residual functional capacity. The claimant also has not been medically reliant on a cane or other assistive device since March 31, 2024. Also militating against a more restricted residual functional capacity is the fact the claimant's treatment records document relatively few functional complaints (see Exs. 1F to 4F to 15F). That is there are few to no complaints about problems lifting, walking, standing, understanding things, remembering things, applying information, interacting with others, concentrating, persisting at tasks, pacing himself, adapting to changes, or managing his affairs. (Id.).

The fact the claimant has not experienced significant, adverse, and ongoing medication side effects since the March 31, 2024, alleged onset date also supports the assessed residual functional capacity as do the claimant's activities of daily living. To this last point, the undersigned notes again the claimant has served as a pastor since March 31, 2024 (see, among other places in the record, Exs. 1F, p. 64; and 13F, p. 91). The claimant has also traveled to Africa (see, again, Ex. 7F, p. 8). In addition, the claimant has engaged in physical exercise since March 31, 2024 (see, for example, Ex. 7F, p. 8). The claimant has also been pursuing a doctorate degree since March 31, 2024, "full-time" (see Ex. 1F, p. 65). See also page 50 of exhibit 1F where the following information was recorded on March 14, 2024:

> Veteran presents with good news. He was awarded back pay for his disability claim which will allow him to work full time on his doctorate and teaching rather than continuing to work his full-time job while working on his doctorate. Will teach and supervise pastoral care. Also shared he noticed he was drinking more daily and chose to stop. Isn't sure what his expectations are with regard to alcohol.

The claimant was similarly described as follows on April 11, 2024: "Now pursuing his doctorate in chaplaincy full time and teaching pastoral care as well" (see Ex. 1F, p. 38).

The following additional facts concerning the claimant's mental functioning also support the assessed residual functional capacity:

- The claimant has not complained to treating sources of having ongoing problems understanding, remembering, or applying information since the

March 31, 2024, alleged onset date (see, again, Exs. 1F and 4F to 15F).

• The claimant's treatment records do not show he has been observed to have ongoing problems since the March 31, 2024, in terms of his ability to understand, remember, or apply information. (Id.).

• The claimant's treatment records show he has been able to understand and answer questions about his health and follow prescribed medical advice since the March 31, 2024, alleged onset date. (Id.).

• The claimant was able to understand and answer questions during his hearing.

• The claimant has not complained to treating sources of having ongoing problems relating to others since the March 31, 2024, alleged onset date (see, again, Exs. 1F and 4F to 15F).

• The claimant's treatment records do not show he has been observed to have ongoing problems interacting with others since the March 31, 2024, alleged onset date. (Id.).

• The claimant's mental functioning has not been so poor at any time since the March 31, 2024, alleged onset date that it has attracted the attention of authorities.

• The claimant has not complained to treating sources of having ongoing marked or extreme problems concentrating, persisting at tasks, or pacing himself since the March 31, 2024, alleged onset date (see, again, Exs. 1F and 4F to 15F).

• The claimant's treatment records do not show he has been observed to have ongoing marked or extreme problems since the March 31, 2024, alleged onset date in terms of concentration, persistence, or pace. (Id.).

• The claimant was able to concentrate during his hearing.

• The claimant has not complained to treating sources of having ongoing marked or extreme problems adapting to changes or managing his affairs since the March 31, 2024, alleged onset date (see, again, Exs. 1F and 4F to 15F).

• The claimant's treatment records do not show he has been observed to have ongoing marked or extreme problems since the March 31, 2024, alleged onset date in terms of his ability to adapt or manage his affairs.

• The claimant has not been psychiatrically hospitalized since the March 31, 2024, alleged onset date.

• The claimant was also able to withstand the stress of his hearing

(ECF No. 13, PageID #: 4505-07). This discussion reveals that the ALJ relied on multiple of the relevant factors—including the medical evidence, Claimant's response to and side effects from medication, and Claimant's daily activities—when considering whether to credit Claimant's symptom allegations. Thus, the ALJ complied with SSR 16-3p and substantial evidence supports her decision. At best, Plaintiff highlights additional evidence that supports he experienced these symptoms but, as the Commissioner argues, does not identify specific limitations that the ALJ should have considered but did not. Moreover, where the ALJ's decision is supported by substantial evidence, the Court must defer to it, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).

**VI. Conclusion**

Based on the foregoing, the Court AFFIRMS the Commissioner of the Social Security Administration's final decision denying Plaintiff benefits. Plaintiff's Complaint is DISMISSED.

Dated: October 20, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE